Walter E. Hendricks and Dema P. Hendricks v. Commissioner.
Hendricks v. Commissioner
Docket No. 149-67.
United States Tax Court
T.C. Memo 1970-13; 1970 Tax Ct. Memo LEXIS 345; 29 T.C.M. (CCH) 36; T.C.M. (RIA) 70013; January 19, 1970, Filed. *345 Charles D. Gray, III, for the petitioners. J. Randall Groves, for the respondent. ATKINS
Memorandum of Supplemental Findings Pursuant to Remand ATKINS, Judge: On November 12, 1968, this Court filed its opinion in the instant case, holding that, although shares of Syntex stock were purchased by Bache & Co. on December 27 and 30, 1963, pursuant to the direction of the petitioners to purchase such shares and close out their short positions in Syntex stock, the petitioners were not entitled to deduct any loss on the short sales for the taxable year 1963, since it was not until January 3 and 6, 1964, (the settlement dates) that the stock so purchased was received by the broker for purposes of delivery to close the short sale transactions. Following such opinion this Court entered its decision in the case on December 23, 1968. Thereafter, on July 9, 1969, the United States Court of Appeals for the Fourth Circuit entered its opinion affirming the decision of this Court. By order filed on August 28, 1969, the Court of Appeals withdrew its opinion and remanded the case to this Court for "an express finding as to whether taxpayers actually had the option of using the purchased *346 shares to retain a long position in Syntex stock," stating that the appeal would abide the determination of that issue. In its order the Court of Appeals stated that this Court in its discretion might take additional testimony. On November 6, 1969, this Court did take additional testimony [1] and the parties filed memorandum briefs. In the light of the evidence presented we feel that it is necessary, in order to comply with the order of remand, to make additional findings of fact. For management purposes Bache has several departments which include the margin (credit) department, the sales department, the cashier's department, and the order room. A primary concern of Bache, and of its margin department, is to comply with the rules of the stock exchanges *347 pertaining to margin requirements and thereby avoid penalties. Brokerage firms may adopt binding house rules pertaining to trade practices. Bache does not have a published manual of house rules of practice. However, it is the unwritten policy of Bache not to change an order upon the request of a customer, after the trade has been executed. The Syntex stock purchased by Bache on December 27 and December 30, 1963, pursuant to instructions of the petitioners to cover their short positions in Syntex, was purchased for the petitioners' type 3 accounts, namely, the short accounts, as shown by the confirmation slips. [2] The money with which the purchases were made was already in the type 3 accounts. *348 Pursuant to rules of the stock exchanges all transactions are recorded by Bache in accounts as of settlement dates and interest is computed accordingly. However, for margin purposes, the margin department of Bache operates upon the basis of the trade date, rather than the settlement date, and keeps its books accordingly. Therefore, in such department, a short position is closed out on its books on the same day that a purchase is made pursuant to an order to purchase to cover. Any request by the petitioners after the trade date to permit them to hold the purchased shares long and retain their short positions, or cover their short positions with other Syntex stock, would have been made to the salesman in Bache's Charlotte, North Carolina office who would have referred the request to the margin department in New York for its approval. Such department would not have given its approval and reversed its 38 bookkeeping entries, irrespective of how much additional margin the petitioners might provide and irrespective of any other things which they might do, because the abovementioned unwritten policy of Bache would not have permitted such a change of position. However, as pointed out *349 infra, a partner or officer of a brokerage firm has the power to waive house rules under proper circumstances. [3]
If the petitioners were permitted to hold the purchased shares long, offsetting their short position, a "box" would be created, in which case Rule 462 [4] of the American Stock Exchange would require that there be maintained a margin of 10 percent of the market value of the stock held long. If such a box were permitted, the position would be even and the broker could thereafter sustain no loss. There would be no margin requirement imposed by Regulation T of the Federal Reserve Board. The petitioners would, of course, have to comply with the American Stock Exchange margin requirement of 10 percent of the long position. In such a situation whatever margin there was in the margin account with respect to the short position [5] would be released *350 to the extent it might exceed such 10 percent margin requirement. There is no rule or regulation of the Federal Reserve Board or of the Securities and Exchange Commission or of the American or New York Stock Exchanges which deals specifically with the manner of closing a short sale. There is no rule or regulation of any of those regulatory bodies which would prohibit a brokerage firm from complying with a request of a customer to hold long any stock which had been purchased pursuant to his order to purchase to cover a short position, and retain his short position, if, *351 prior to the settlement date, the customer furnished the broker enough cash or securities to meet any margin requirements. Nor is there any rule or regulation of such regulatory bodies which would prohibit a brokerage firm from complying with a request of a customer to close out a short position with shares of stock other than those purchased by the broker pursuant to the order of the customer to purchase and cover, and thereafter hold such purchased shares long. Nor is there any rule or regulation of such regulatory bodies which would prohibit a brokerage firm from waiving any of its house rules and complying with any such request of a customer. Brokerage firms sometimes waive their house rules and make changes in a customer's account upon his request, when such action does not violate any rule or regulation of the stock exchanges or any Federal agency, but only if a partner or officer of the brokerage firm chooses to give his approval to such waiver or request. This is the practice of the "street". None of the witnesses has ever encountered a situation where a customer, after a broker had acquired shares upon the customer's instructions to purchase to cover his short position, *352 had requested that the shares so purchased be held long. Accordingly, we cannot find that there was any established practice in the securities market with respect to the approval or disapproval by brokerage firms of such a request. If the word "option" as used in the order of the Court of Appeals means an unqualified right of the petitioners to use the purchased shares to retain a long position in Syntex stock upon meeting all margin requirements, the petitioners had no such option, since a waiver by Bache of its house rule would be required. If the word "option" means a possibility that Bache would have consented to a waiver of its house rule and permitted the petitioners to use the purchased shares to retain a long position in Syntex stock upon meeting all margin requirements, the petitioners did have such an option. We make no finding as to whether Bache, upon request, would have consented to a waiver of its house rule, but find that the record fails to disclose any impelling reason for denying such a request. 39 The Clerk of this Court is directed to transmit the record in this case to the United States Court of Appeals for the Fourth Circuit, including these supplemental *353 findings which have been made pursuant to the above-mentioned order of remand of the Court of Appeals dated August 28, 1969. Footnotes
1. The petitioners presented the testimony of the assistant credit manager of Bache who had testified at the prior trial. The respondent presented the testimony of a consultant to the Federal Reserve Board who had previously been employed by the Securities and Exchange Commission, that of the chief examiner of the American Stock Exchange, and that of an associate director in the Department of Member Firms, New York Stock Exchange.↩
2. On the reverse side of each slip is a statement which provides in part: IT IS AGREED THAT: All transactions are subject to the rules and customs of the Exchange or Market where executed and of its Clearing House, if any, and to all the terms of our general customer's agreement and, (as to accounts on margin), our margin customer's agreement, and of all written agreements between you and us. It should be added that we have not been furnished the general customer's agreement or the margin customer's agreement or any written agreements between the petitioners and Bache. Hence there is no showing that there was any contractual agreement which would have specifically precluded petitioners from using the purchased shares to retain a long position in Syntex.↩
3. We do not construe the testimony of Bache' assistant credit manager as meaning that the margin department had final authority to pass upon such a request, or as establishing that the petitioners could not have obtained the approval of such a request from a partner of Bache which would have been binding upon the margin department.↩
4. Rule 462(c)4 of the American Stock Exchange provides in part: Offsetting "Long" and "Short" Positions in the Same Security. No margin shall be required on either position if delivery has been made by the use of the "long" securities. Otherwise the minimum margin shall be 10% of the market value of the "long" securities. In determining such margin requirement "short" positions shall be marked to the market. ↩
5. How far such margin may have fallen below the minimum maintenance requirement of Bache and the maintenance margin of the American Stock Exchange upon short positions, i.e., 30 percent, is not shown.↩